# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 05-887

BARBARA MIGUEZ

VERSUS

PLATINUM UNDERWRITERS REINSURANCE, INC., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20033353
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Glenn
B. Gremillion, Judges.

**AFFIRMED.**

**Thibodeaux, Chief Judge, dissents and assigns written reasons.**

Glenn John Armentor
J. Christian Lewis
300 Stewart Street
Lafayette, LA   70501
(337) 233-1471
COUNSEL FOR PLAINTIFF/APPELLANT:
    Barbara Miguez

William N. Gee, III
Post Office Drawer 52048
Lafayette, LA   70505-2048
(337) 289-0808
COUNSEL FOR INTERVENOR/APPELLEE:
    William N. Gee, III

**F. Scott Kaiser**
**Annette N. Peltier**
**Rebecca B. Crawford**
**E. Kate Anderson**
**Phelps Dunbar, LLP**
**Post Office Box 4412**
**Baton Rouge, LA 70821-4412**
**(225) 346-0285**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**United States Fidelity & Guaranty**
**Ambar Drilling Fluids, LP, LLP**

**Michael E. Parker**
**Allen & Gooch**
**Post Office Drawer 3768**
**Lafayette, LA 70502-3768**
**(337) 291-1350**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Lincoln General Insurance Company**

**Guy D. Perrier**
**Jennifer L. Sinder**
**Leake & Anderson, LLP**
**1100 Poydras Street, Suite 1700**
**New Orleans, LA 70163-1701**
**(504) 585-7500**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Lauren Carter**

**Darrell R. Sims**
**Law Offices of Keith S. Giardina**
**9100 Bluebonnet Centre Boulevard, Suite 300**
**Baton Rouge, LA 70809**
**(225) 293-7272**
**COUNSEL FOR SECONDARY INTERVENOR/APPELLANT:**
**Liberty Mutual Fire Insurance Company**

AMY, Judge.

The plaintiff filed suit seeking damages after she was injured in a car accident when the vehicle in which she was traveling was struck by a truck belonging to Ambar Drilling. The Ambar Drilling vehicle was driven by the daughter of one of the company's employees. The employer and its insurer filed a motion for summary judgment asserting that the daughter's use of the company truck was not covered by the employer's insurance policy. The trial court granted the summary judgment in favor of the employer and the insurer. The plaintiff and her workers' compensation carrier, an intervenor, appeal. For the following reasons, we affirm.

## Factual and Procedural Background

The accident at issue in this suit occurred while Lauren Carter was delivering newspapers pursuant to a contract with *The Advocate*. Ms. Carter allegedly attempted to make a left turn into the path of an oncoming vehicle in which the plaintiff, Barbara Miguez, was a passenger. Ms. Miguez alleges injuries as a result of the accident.

The present dispute involves the insurance coverage on the truck driven by Ms. Carter. In her deposition, Ms. Carter explained that she lived with her mother and that her mother's personal vehicle would not start at the time she started her deliveries. Therefore, she asked her mother if she could use the truck provided by her mother's employer, Ambar Drilling Fluids, LP, LLP (hereinafter "Ambar Drilling"). Ms. Carter stated that her mother consented. Her mother, Carla Stewart, testified in her deposition that she did not recall whether she had given specific permission to Ms. Carter to use the Ambar Drilling truck on the morning of the accident.

Ms. Miguez instituted this suit to recover damages for her injuries. Among others, Ms. Carter, Ambar Drilling, its automobile liability insurer, United States

Fidelity and Guaranty Company (hereinafter "USF&G"), and its parent company, Patterson-UTI Energy, Inc. (hereinafter "Patterson"), were named as defendants. Liberty Mutual Fire Insurance Company (hereinafter "Liberty Mutual"), Ms. Migeuz's workers' compensation provider, intervened.

Ambar Drilling and USF&G (hereinafter "the defendants") filed a motion for summary judgment, arguing that the terms of the Ambar Drilling/Patterson liability policy precluded coverage for a third party driving one of its vehicles without its permission. In addition to language contained within the policy, the defendants point to a written policy against such use. Further, Ambar Drilling additionally sought summary judgment on the basis that the plaintiff would be unable to prove its independent liability for the accident. Following a hearing, the trial court granted the motion for summary judgment in all respects, dismissing USF&G, Ambar Drilling, and Patterson. The matter was designated as a final judgment. Ms. Miguez and the intervenor, Liberty Mutual, appeal.[1]

**Discussion**

Ms. Miguez questions the trial court's determination that the USF&G policy does not afford coverage for this accident. She argues that this case is inappropriate for summary judgment due to a case rendered by a panel of this court, *Mahaffey v. State Farm Mutual Automobile Insurance Co.*, 95-641 (La.App. 3 Cir. 2/28/96), 679 So.2d 129, *writ denied*, 96-1689 (La. 10/11/96), 680 So.2d 650. Ms. Miguez asserts that *Mahaffey*, a case involving a business vehicle driven by a third-party non-employee, requires this court to conclude that a genuine issue remains as to whether it was foreseeable that Ms. Stewart would permit a third party to drive the company

---

[1] Because Liberty Mutual's argument on appeal mirrors that of Ms. Miguez, and for ease of discussion, we name only Ms. Miguez when referring to the appellants.

vehicle. Furthermore, Ms. Miguez argues, that the policy language itself "fails to specify clearly that coverage would not be afforded if a person who has specific permission to use the covered vehicle (Carla Stewart) grants permission to another (Lauren Carter)."

Louisiana Code of Civil Procedure Article 996(B) provides, in part, that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." On appeal, summary judgments are reviewed *de novo* and under the same criteria considered by the trial court. *Campbell v. Verrett*, 02-0695 (La.App. 3 Cir. 10/30/02), 829 So.2d 1141, *writ denied*, 02-2911 (La. 2/14/03), 836 So.2d 116.

The USF&G policy in question in this case lists parent company Patterson as the named insured and provides, in pertinent part, as follows:

1. **Who is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

      (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

3

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Louisiana Civil Code Article 2045 provides that: "Interpretation of a contract is the determination of the common intent of the parties." Furthermore, pursuant to La.Civ.Code art. 2046, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." These general contract principles of the Louisiana Civil Code are applicable in construing an insurance policy, as it is a contract between the parties. *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So.2d 577. Furthermore, "[a]bsent conflict with statutory provisions or public policy, 'insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.'" *Etienne v. National Auto. Ins. Co.*, 99-2610, p. 4 (La. 4/25/00), 759 So.2d 51, 54, *quoting Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191.

The contractual language in the insurance policy in this case is clear and unambiguous. Named as insured are "*you*" and "anyone else using with *your*

4

*permission* a covered 'auto' *you* own, hire or borrow[.]" (Emphasis added.) According to the Business Auto Coverage Form section of the policy the term "'you' and 'your' refer to the Named Insured shown in the Declarations." Again the policy lists Patterson as the named insured. Thus, save for the listed exceptions which are inapplicable in this case, the policy provides liability for Patterson and its permittees using a covered auto.

Applying the terms of the contract as written, the only remaining consideration is whether Patterson/Ambar permitted Ms. Carter, a non-employee, to drive the vehicle. The submission shows that it did not. On this point, we focus on the record's inclusion of an Ambar Drilling document entitled "Company Owned Vehicle Use Agreement." The document, signed by Ms. Stewart, provides, in part that:

> I, the undersigned, understand that during the course of my employment with Patterson Energy, Inc; Patterson Drilling Company (Company), I may be called upon to drive or otherwise operate a vehicle owned, operated, or leased by the company (company vehicle) and do hereby acknowledge and agree to abide by the following terms and conditions with respect to driving or operating a company vehicle
>
> . . . .
>
> 3. Only qualified employees who have executed this drive use agreement shall be allowed to drive or operate a company vehicle. Specific authorization to drive or operate a company vehicle must be obtained from the employee's supervisor.
>
> 4. Company vehicles are to be used for business purposes only and personal use is not allowed.

(All caps format omitted.)

This document sets forth the parameters of the permission granted to Ms. Stewart by the employers. It expressly states that only qualified employees who execute the agreement may operate the vehicle and then only for business purposes. Even qualified drivers could not use the vehicle for personal use. There is no

5

indication that Ms. Carter, a non-employee, was a qualified user. Furthermore, the vehicle was not being used for the employer's business purposes. Rather it was being used for a non-employee's personal business use. In the face of this express prohibition as to non-employer related purposes, neither Ms. Stewart's testimony regarding her lack of careful reading of the document at the time she signed it nor her testimony generally referencing other employees' use of their company vehicles creates a genuine issue of material fact as to whether the employer conveyed permission to this non-employee driver, Ms. Carter.

It is worth noting that, in *Perkins v. McDow*, 615 So.2d 312, 316 (La.1993), citing *Malmay v. Sizemore*, 493 So.2d 620 (La.1986), the supreme court explained that:

> This court has never extended coverage to a second permittee when the named insured has expressly prohibited the first permittee from allowing anyone else to drive the vehicle, even though the second permittee was unaware of the prohibition. The focus of the omnibus clause is on the volition and intent of the named insured.

Such an express prohibition exists in the present case.

Neither do we find persuasive Ms. Miguez's assertion that this matter is controlled by *Mahaffey*, 679 So.2d 129. As stated above, this case is one primarily turning on contractual interpretation. Significantly, the policy language in this case differs from that excerpted in *Mahaffey*. In that case, an insured was defined, in part, as "[a]ny other person while using such a car if its use is within the scope of consent of you or your spouse[.]" *Id.* at 131. The court in *Mahaffey* found that the case involved whether there was implied permission. In the present case, not only does the policy language differ, but the parameters of the employer's "permission" in this case is evident in its written policy. In short, *Mahaffey* is not controlling in this case.

The trial court correctly entered summary judgment in favor of USF&G, Ambar Drilling, and Patterson. Ms. Miguez's arguments lack merit.

**DECREE**

For the foregoing reasons, the motion for summary judgment granted by the trial court is affirmed. All costs of this proceeding are assessed against the appellants, Barbara Miguez and Liberty Mutual Insurance Company.

**AFFIRMED.**

BARBARA MIGUEZ

VERSUS

PLATINUM UNDERWRITERS REINSURANCE, INC., ET AL.


THIBODEAUX, Chief Judge, dissenting.


A first or second permittee pursuant to an omnibus clause of an insurance policy must generally prove that a vehicle was being used with the express or implied permission of the named insured in order to secure coverage under the policy for one's delictual acts. *Rogillio v. Cazedessus*, 241 La. 186, 127 So.2d 734 (La.1961). Whether the operation of the vehicle is reasonably foreseeable is the test for express or implied permission of the named insured. *Perkins v. McDow*, 615 So.2d 312 (La.1993). Thus, under the circumstances of this case, was it reasonably foreseeable that Lauren Carter had the permission of her mother, Carla Stewart, to drive this vehicle? I think so. It is clear that Ms. Stewart had the regular, if not daily, use of her employer's truck and that the truck was regularly housed at Ms. Stewart's residence. Ms. Carter, the driver of the truck, lived with her mother. Under these circumstances, I believe Ms. Carter's use of the Ambar Drilling Fluids' truck can be reasonably considered as being with the permission of Ambar and within the scope of consent of the named insured, Ambar.

The omnibus clause in the policy at issue covered "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow . . . ." As the

late Justice Tate opined, "[i]f the initial permission is so given by the named insured, the actual operation of the automobile is with his permission, whether by the first permittee or instead by a second permittee to whom the first permittee entrusted the use of the vehicle." *Hughes v. Southeastern Fidelity Ins. Co.*, 340 So.2d 293, 295 (La.1976) (Tate, Justice, concurring).

It is axiomatic that insurance policies should be interpreted so as to permit, not deny, coverage. This sentiment is in accord with the strong statutorily-emphasized public policy of this State that:

> . . . all liability policies within their terms and limits are executed for the benefit of all injured persons, and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.

La.R.S. 22:655(D). Thus, in my view, any restriction on the permissive use clause in an insurance contract is contrary to public policy. See, e.g., *Perkins v. McDow*, 615 So.2d 317 (Watson, J., concurring).

For the foregoing reasons, I respectfully dissent.

2